**GIDDINGS et al. v. HARDING.**
(No. 409–4100.)

(Commission of Appeals of Texas, Section A. Jan. 28, 1925.)

1. **Partnership** ⊂⊃5—**Contract whereby parties engaged in cattle business sharing profits and losses, held one of partnership.**

A contract between plaintiff and defendant, whereby the parties agreed to engage in the cattle business, using defendant's ranch, defendant to furnish necessary tools and implements and certain other specified contributions, the parties to share in both the profits and losses, *held* one of partnership.

2. **Partnership** ⊂⊃75—**Interest on money borrowed for business properly considered as an expense in determining losses.**

Under an agreement to engage in the cattle business, providing that defendant was to receive one-half of net proceeds less actual expenses, *held*, that plaintiff was entitled to have interest on money borrowed by him with which to purchase cattle considered as an expense of the partnership business in determining the amount of loss which the partners should share.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by C. H. Giddings and others against Charles E. Harding. Judgment for plaintiffs was reversed by the Court of Civil Appeals (256 S. W. 305), and plaintiffs bring error. Judgment of the Court of Civil Appeals reversed, and that of the trial court affirmed.

Underwood, Jackson & Johnson and Paul A. Speer, all of Amarillo, for plaintiffs in error.

Winters, Price & Stevens and Julian C. Risk, all of Chicago, Ill., W. J. Flesher, of Canyon City, and Turner & Dooley, of Amarillo, for defendant in error.

BISHOP, J. This is a suit by C. H. Giddings, C. M. McElroy, and W. B. Campbell, plaintiffs in error, against Charles E. Harding, defendant in error. The plaintiffs in their petition alleged a partnership agreement between Harding and Giddings; that one-half of Giddings' interest therein, with Harding's consent, was assigned to McElroy and Campbell; and that upon a settlement of the partnership affairs, after the termination of the said agreement, Harding was indebted to them in the sum of $2,045.27, for which judgment was sought.

The written contract attached as an exhibit to plaintiffs' petition is as follows:

"This lease, made this 6th day of January, 1919, by Chas. E. Harding of the first part and C. H. Giddings of the second part, witnesseth: That the said party of the first part, in consideration of the rents, covenants, and agreements of the party of the second part, hereinafter set forth, does by these presents grant, lease, and rent to the said party of the second part the following described property, situated in Deaf Smith, and Randall counties, state of Texas, to wit, the Green Valley Ranch, near Dawn, Tex., owned by party of the first part, containing about 20,000 acres, to have and to hold the same unto the said party of the second part from January 6, 1919, to May 1, 1921. And the said party of the second part, in consideration of the leasing the premises, as above set forth, covenants and agrees with said party of the first part to pay said first party, his heirs or assigns, as rent for the same, the sum of eight thousand and no/100 ($8,000.00) dollars, cash rent, payable four thousand ($4,000.00) in cash, receipt of which is hereby acknowledged, and four thousand ($4,000.00) on or before January 1, 1920, and the further sum of one-half of the net proceeds received from the handling of and sale of the cattle from said ranch by said second part, less the actual expenses of purchase, feeding, handling, taxes, and other expenses in connection with the handling of said cattle on said ranch; the settlement for the said one-half (½) of the net proceeds last above mentioned to be made within 30 days from the time of selling the last of the cattle handled each particular year.

"If the sale and handling of cattle mentioned in last above paragraph shall result any year

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in a loss, instead of in a profit, said party of the first part hereby agrees to pay to said second party one-half (½) of such loss, settlement to be made the same as provided above for profits.

"Said first party further agrees with said second party to furnish on said ranch for use of said second party enough tools and implements to do the necessary farming on said ranch; also about eight head of saddle horses and eight head of work mules, harness for same and the wagons that are now on said ranch; also the landlord's share for the farm land that is rented to other parties is hereby assigned and transferred to said second party, either as feed or to purchase feed for the cattle handled on said ranch, but not to be included in the items of expense against said cattle.

"The covenants herein contained shall be binding upon the respective parties, their heirs, executors, and adminstrators.

"In witness whereof the said parties have hereunto set their hands the day and year first above written." (Signed by Chas. E. Harding and C. H. Giddings.)

About May 21, 1920, this contract was canceled by mutual consent and this suit instituted to recover one-half of the alleged loss sustained in the conduct of the cattle business under the terms thereof. Harding, in his answer, denied that he was engaged in said business with plaintiffs as a partner, and also denied that there was any loss in the transactions covered by the contract after a proper accounting should be had.

An auditor was appointed, who made his report showing an item for interest paid on money borrowed for the purpose of purchasing cattle handled in the conduct of the business, which item was charged against said business and was an amount in excess of the alleged loss sustained. The oral evidence raised an issue of fact as to whether at the time of entering into the written contract it was the intention of the parties thereto that funds should be borrowed for the purpose of purchasing cattle, and the interest paid therefor be taken into consideration in determining the net profits or loss. This issue was by the court in a general charge submitted to the jury. The verdict was against defendant Harding in the sum of $1,707.40, which was, under the charge of the court, a finding that it was the intention that such item of interest be considered as an expense of the business.

On appeal from the judgment rendered on this verdict the Court of Civil Appeals reversed the judgment and remanded the cause, holding that the terms of the above quoted contract "do not evidence an intention on the part of Harding and Giddings to enter into a contract of partnership, and that such contract, as it operated as between the parties to it, did not, as a matter of law, establish the relation of partners between them"; and also holding that under the terms of said contract "Giddings was to furnish the cattle" and that "the expenses of handling, keeping, and caring for the cattle

incurred in the operation of the ranch, and reasonably necessary therefor, does not include interest on money borrowed by Giddings et al. to obtain their part of the principal in the undertaking."

[1] We cannot agree with either of these holdings. In our opinion the terms of this contract evidence an intention on the part of the parties thereto to engage in a business undertaking with each other, which in law constitutes a partnership. Cattle were to be purchased, pastured, fed, and sold. The net profits derived from the business were to be equally divided between Giddings and Harding. Should there be a loss instead of a profit, each was to sustain one-half the loss. In conducting this business, Giddings was to handle, care for, feed and sell the cattle. He was also "to do the necessary farming on said ranch" for the purpose of carrying on said business, and Harding was to furnish him all necessary tools and implements for this purpose. Harding was also to furnish "about eight head of saddle horses and eight head of work mules, harness for same, and the wagons" then "on said ranch." Also Harding's share of rents from farm land rented to other parties was assigned to Giddings "either as feed or to purchase feed for the cattle handled on said ranch, but not to be included in the items of expense against said cattle." It is true the contract is in form a lease. But from its provisions it is clear that it was the intention of Giddings and Harding that the use of this 20,000 acres be devoted to the business enterprises in which they were to be equally interested. Harding's interest in the property was not merely for the purpose of collecting an additional rent for the use of his land. He was under this contract to have a common interest with Giddings in the success of the joint enterprise, and, if it failed to produce the profits hoped for, he was to bear one-half the loss, though his share of the loss should be more than the amount of cash rent received by him. He was placing the use of his ranch into a business, and, though he was receiving a cash consideration for its use, he was also contracting that should the business project fail, he would pay not only the amount received by him as rent, if necessary to cover one-half the loss, but also any further sum which should be necessary to cover such loss.

Harding was interested in the profits of the cattle business as a joint owner of the business, and not merely as an additional sum to be paid him as rent for his land. In this respect this contract differs from that under consideration in the case of Fink v. Brown (Tex. Com. App.) 215 S. W. 846, in which it was held that a stipulation for profits was "merely a provision for further compensation as rental." Under the terms of this contract, we think it is clear that Harding contemplated joining in a common

business to be operated for the joint benefit of himself and Giddings, "and in which they as owners each of an interest would be entitled to share as principals in the profits as such." Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S. W. 427; Cothran v. Marmaduke & Brown, 60 Tex. 370; Freeman v. Huttig Sash & Door Co., 105 Tex. 570, 153 S. W. 122, Ann. Cas. 1916E, 446.

[2] We find no provision in this contract which would warrant the holding that Giddings had obligated himself to furnish the cattle or the funds with which cattle would be purchased. The provision that Harding was to receive "the further sum of one-half of the net proceeds received from the handling and sale of the cattle from said ranch by said second party, less the actual expenses of purchase, feeding, handling, taxes, and other expenses in connection with the handling of said cattle on said ranch," should not be construed to mean that Harding was to furnish the cattle or the funds for their purchase. This is the only provision in the contract in which the purchasing or acquiring of the cattle is expressly mentioned. The business of the partnership was to buy and sell cattle, and there is nothing in the written contract which should be construed to prevent interest on money borrowed to purchase cattle from being an expense of the business.

We have considered all assignments made by defendant in error, and have concluded that no error was presented for which the judgment of the trial court should have been reversed, and recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.