## Reeves v. Tomlin, et al.

(Decided February 23, 1926.)

## Appeal from Boone Circuit Court.

1. Wills—Devise to Son and His Bodily Heirs After His Death Held to Create Life Estate in Son, with Remainder in Fee Simple to His "Bodily Heirs" (Ky. Stats., Sections 2343, 2345).—A devise to a son and his bodily heirs after his death did not create an estate tail converted into a fee by Ky. Stats., section 2343, but a life estate in the son, with remainder in fee simple to his bodily heirs, in view of section 2345; the words "bodily heirs" not being words of limitation.

2. Dower.—Widow is not entitled to dower in life estate of her husband.

3. Wills—Bodily Heirs of Life Tenant of Land, in which Life Tenant's Mother had Prior Life Estate, Held to Take, whether Second Life Tenant Died Before or After His Mother.—Where land was devised to testator's widow for life and then to son, and his bodily heirs after his death, and will contained a devise over if son left no bodily heirs, the bodily heirs took at son's death, whether the son died before or after his mother.

B. H. Riley for appellant.

JOHN L. VEST for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The question presented is, what interest Plumma Norman took under his father's will, that is, will a deed made by Plumma Norman pass the fee, or does the land at his death go to his children, or if he has no children, to his brothers and sisters. The will is as follows:

"Item 1st. After all my just debts and funeral expenses are paid I give and bequeath to my beloved wife, America A. Norman, my home residence lying on the west side of the Covington and Lexington turnpike road adjoining Walton, including all the land thereto attached and the adjoining farm also known as the Burton farm, containing in all two hundred acres (200). To have and to hold the same for her own proper use during her natural lifetime. Also all the household and kitchen furnishing of every description on or about said premises to use and to do as she pleases with, and in addition thereto my said wife shall have set apart to her every

other article or species of property which is by law
set apart to widows and if any such articles are not
on hand then their equivalent in money shall be
given to her, also one-third part of all other personal
property, moneys, etc., that I may be possessed of at
my death, same to be taken by her in lieu of dower;
and at her death I give the same realty as herein-
after mentioned.

"Item 2nd. I give and bequeath to my son,
Eppa Norman, all that tract of land lying in Kenton
county, Kentucky, owned by me and known as the
Yelton farm, situated on the Covington and Lexing-
ton turnpike road and C. S. R. R., including all the
shares purchased by me of the heirs, &c., of the said
farm containing in all about (230) acres to my said
son and his bodily heirs after his death, except wife,
Susan Norman, if living, shall have the usual por-
tion set apart to her as the widow of my said son,
Eppa Norman, and if the said Eppa Norman shall
die leaving no living bodily heirs then this bequest
to revert back to his brothers if living or their bodily
heirs in equal parts.

"Item 3rd. I give and bequeath to by son,
Eddie Norman all that tract of land owned by me
lying in Kenton county, Kentucky, known as the
Holder farm containing about (230) two hundred and
thirty acres, to my son Eddie Norman and his bodily
heirs after his death, and if my said son should die
leaving no bodily heirs then this bequest is to revert
back to his surviving brothers or their heirs in equal
parts save the right reserved to his widow if he
should leave one, to a one-third portion during her
natural life.

"Item 4th. I give and bequeath to my son W.
B. Norman the tract of land in Boone county, Ken-
tucky, adjoining the John Richey land and fronting
on the Cruises creek road near and east of Walton,
containing about sixty-four acres, also two lots in
Walton west of the turnpike road, one known as the
Ingram lot and the other known as the store house
lot, also the (18) acre lot purchased of Finnell, one
of the John Richey heirs. The said eighteen acre
lot may be sold by my said son for the purpose of im-
proving the other bequest to him of realty and also
(800) eight hundred dollars in cash to be paid direct
to my said son free of any incumbrance. Said realty

to my son and his bodily heirs after his death, except as provided for the sale of the eighteen acre lot, and if my son should die leaving no bodily heirs then this bequest shall revert back to his brothers if living or their bodily heirs in equal parts, save and except his widow, if living, shall have set apart for her use one-third of said realty during her life.

"Item 5th. I give and bequeath to my son Plumma Norman (after the death of my wife America A. Norman) the farm on which I now live, including the Burton farm thereto adjoining, containing about (200) acres, being the same property willed to my wife described in item 1, to my said son Pluma Norman and his bodily heirs after his death, and if my said son should die leaving no bodily heirs then this bequest shall revert to his surviving brothers or their heirs in equal parts save the right reserved to his widow, if he should leave one, to a one-third interest during her natural life.

"Item 6th. It is my will that all my personal effects, Farmers and Traders National Bank stock, money deposited in bank accounts and notes for money, stock and all personalty of every description that may be left on hand and not hereinbefore disposed, shall be equally divided among by four sons hereinbefore named, share and share alike, or if any of my sons have died leaving bodily heirs then such heirs shall secure the share that their father would have been entitled if living in the foregoing.

"Item 7th. I mean all of said effects that I may be possessed of at my death to be equally divided."

The will was made in 1891 and was probated in 1898. The mother died in May, 1922. Plumma is sixty-one years old; he has one child living who is thirty years old. The circuit court held that a deed from Plumma passed the fee and adjudged that the purchaser must accept the deed tendered him. The purchaser appeals. The property is not devised to Plumma Norman and his bodily heirs. This would create an estate tail, which under our statute is converted into a fee. See 2343, Kentucky Statutes. The property is devised to Plumma Norman and his bodily heirs after his death. The words "bodily heirs" cannot be read as words of limitation. The property is devised to the bodily heirs after the death of Plumma Norman. They are devisees under this clause of the will sub-

ject to the life estate of the widow and the estate vested in Plumma Norman and as his estate terminates at his death it is necessarily a life estate.   So the effect of this clause of the will is a devise of the property to Plumma Norman for life, with the remainder at his death to his bodily heirs.   Such a devise was a fee at common law in the father, but section 2345, Kentucky Statutes, provides:

"If any estate shall be given by deed or will to any person for his life, and after his death to his heirs, or the heirs of his body, or his issue or descendants, the same shall be construed to be an estate for life only in such person, and a remainder in fee simple in his heirs, or the heirs of his body, or his issue or descendant."

Under this statute it must be held that Plumma Norman takes only a life estate in the property with the remainder in fee simple to his bodily heirs at his death.

It is urged that Martin v. Martin, 203 Ky. 712, lays down a different rule.   But in that case the property was not devised to the granddaughter and the heirs of her body at her death.   It was in substance a devise to her and her bodily heirs and it was provided that it should be her sole and separate estate free from the control or marital rights of any husband she may have and that should her husband survive her he should have no estate of any kind in the property at her death.   It was pointed out in that opinion that these provisions of the will were inconsistent with the devise of a life estate.   For if only a life estate was intended there was no need to refer to the husband at all.   The provisions cutting the husband out were unnecessary and meaningless, if only a life estate was intended.   In this case it is provided in the will that Plumma Norman's widow should have dower in the land.   This was entirely unnecessary and meaningless if the testator understood that Plumma took a fee. The only reason for adding this clause was to give the widow a right she did not otherwise have; she would not be entitled to dower if Plumma took only a life estate. So the reasoning of the court in Martin v. Martin, when applied to the facts of this case, leads to the opposite conclusion and goes to show that the testator did not intend to vest in Plumma the fee.

It is also insisted that as the mother took a life estate and Plumma only took the property at the end of her life estate, the devise over if Plumma dies leaving no

bodily heirs, under the rule laid down in Atkinson v. Kern, 210 Ky. 824, must refer to Plumma's death before the death of his mother. It is unnecessary for us to consider this question, for the devise to the bodily heirs is direct, and if there are bodily heirs at Plumma's death they take the property at all events, whether their father died before or after his mother.

Judgment reversed and cause remanded for a judgment as above indicated.