**Clifford McHARGUE, Committee of Marvin McHargue, an Incompetent, Appellant,**

v.

**Shirley McHargue SIZEMORE et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 15, 1967.

Rehearing Denied March 29, 1968.

Boyd F. Taylor, Hamm, Taylor & Milby, London, for appellant.

William J. Weaver, Lewis & Weaver, London, for appellees.

WILLIAMS, Chief Justice.

This is an appeal from a judgment of the Laurel Circuit Court construing the will of A. D. McHargue. The controversy is whether the judgment should have declared that the will impressed a trust on the McHargue estate. It is our opinion that it should have.

A. D. McHargue died testate in 1951. His will which was not admitted to probate until 1957 reads as follows:

"LAST WILL AND TESTAMENT
OF A. D. McHARGUE

" I, A. D. McHargue, of Lily, Laurel County, Kentucky, being of sound mind and disposing memory, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking all former wills by me heretofore made.

"ITEM I. I desire that all my just debts and funeral expenses be paid out of my said estate as soon as practicable after my death.

"ITEM II. I hereby will and bequeath to my beloved wife, Grace McHargue and my son, Rudolph McHargue, all of my property, real personal or mixed that I may own or have a right to dispose of at the time of my death, and give and grant unto them full authority to sell the same and if they desire to reinvest the proceeds of said sale in other property.

"ITEM III. It is my will that my said wife, Grace McHargue and son, Rudolph McHargue, take care of, support and maintain another son, of mine, Marvin McHargue, who is an invalid and incompetent during his life, the same to be paid out of my estate hereinabove willed to my said wife & son.

"ITEM IV. I hereby nominate and appoint my said son, Rudolph McHargue, my Executor of this my last will and testament and request that no bond be required of him and that no inventory be made of my estate in so far as the law will permit.

"Dated at London, Kentucky, this the 18th day of Aug. 1949.

"s/t/ A. D. McHargue."

A. D. McHargue was survived by his wife Grace McHargue and seven children, who were his only heirs at law. Grace died intestate in 1956, leaving the seven children as her only heirs.

As previously stated, the will of A. D. McHargue was admitted to probate in 1957. At that time a deed was executed by five of the McHargue children, including Clifford the appellant here, conveying their interests in the subject property to Rudolph McHargue. Of course, neither Rudolph nor Marvin, the incompetent brother, signed the deed. Following delivery of that deed Rudolph owned the property, except for the one-fourteenth interest of the incompetent brother Marvin, and subject to the trust, if any, created by his father's will.

Rudolph, who was a 50-year-old bachelor, married appellee Shirley McHargue (now Sizemore) in 1961. To this union Dennis McHargue was born. Rudolph died intestate in 1964, leaving Shirley and Dennis as his heirs.

Appellant Clifford McHargue, committee of Marvin McHargue, brought this action seeking a declaratory judgment. The judgment concluded that, by his will, A. D. McHargue devised a fee simple title to the property to his wife Grace and his son Rudolph. It was reasoned that such intention was clearly expressed in Item II of the will and strengthened by the use of the words in Item III "my estate hereinabove willed to my said wife & son." It was further concluded that the first words in Item III, "It is my will," should be construed to mean "It is my desire," thereby clarifying any possible ambiguity.

The chancellor properly based his conclusions on an interpretation of the will when read in its entirety. Hanks v. McDanell, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1 (1948). However, we feel that too little emphasis was given the testator's intent to provide for his incompetent son Marvin. It must be remembered that at the time the will was executed Rudolph was living at home with his parents who were caring all the while for Marvin.

It is apparent to us that, taking the sense of the whole will, the father left his entire estate to his wife and one son only on the condition that another son, who, unfortunately, could not care for himself, would be provided for out of the estate. His five other children were excluded entirely. Rudolph, who was living at home on the farm, was the natural one to continue caring for Marvin.

To conclude the word "will" as used in the first part of Item III should be given a precatory flavor is not to afford it the stature it requires. As used, it expresses a command rather than a desire. It was A. D. McHargue's intent that the estate be impressed with a trust and he "willed" it so. We feel the meaning is clear that the estate passed was burdened by the trust created for the support and maintenance of the incompetent son Marvin during his life.

The judgment is reversed, with directions that a new judgment be entered in conformance with this opinion.

All concur.